IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PANDORIA E. AYERS, | : |
|       Plaintiff, | : |
| v. | : Civil Action No. 08-634-JJF |
| MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security, | : |
|       Defendant. | : |

Stephen A. Hampton, Esquire of GRADY & HAMPTON, L.L.C., Dover, Delaware.

Attorney for Plaintiff.

David C. Weiss, Esquire, United States Attorney, and Dina White Griffin, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware. Of Counsel: Eric P. Kressman, Esquire, Regional Chief Counsel, and Nicholas Cerulli, Esquire, Assistant Regional Counsel of the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.

Attorneys for Defendant.

**MEMORANDUM OPINION**

July 14, 2010
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Pandoria Ayers, seeking review of the final administrative decision of the Commissioner of the Social Security Administration (the "Administration") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI, respectively of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383f. Plaintiff has filed a Motion For Summary Judgment (D.I. 16) requesting the Court to reverse the decision of the Commissioner and direct an award of benefits, or in the alternative, to remand this matter to the Administration for further development and analysis. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 20) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated August 24, 2006, will be affirmed.

## BACKGROUND

I. **Procedural Background**

Plaintiff filed her application for DIB and SSI on May 10, 2004, alleging disability since November 10, 2003, due to diabetes and fibromyalgia. (Tr. 68-70, 127-128, 514-517).

1

Plaintiff's application was denied initially and upon reconsideration. (Tr. 37-50). Thereafter, Plaintiff requested a hearing before an administrative law judge (the "A.L.J."). (Tr. 51). On August 24, 2006, the A.L.J. issued a decision denying Plaintiff's application for DIB and SSI. (Tr. 14-25). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 5-7). The Appeals Council denied Plaintiff's request for review, and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying her claim. In response to the Complaint, Defendant filed an Answer (D.I. 10) and the Transcript (D.I. 12) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has filed a Reply Brief. Accordingly, the Court will proceed to address the merits of Plaintiff's claims.

## II. Factual Background

### A. Plaintiff's Medical History, Condition and Treatment

At the time of the A.L.J.'s decision, Plaintiff was 47 years old and defined as a younger individual under the regulations. (Tr. 68, 514, 525). Plaintiff completed high school (Tr. 134, 525), and has past work experience as a sorter for a poultry processing factory. (Tr. 128-129, 525).

By way of brief summary, Plaintiff has a history of consistent complaints regarding fatigue, chronic pain in her whole body, and numbness and tingling in her extremities. She was diagnosed with fibromyalgia, diabetes, carpal tunnel syndrome and rheumatological disorders. Plaintiff's blood work has shown chronic anemia, elevated levels of C-reactive protein, and a high sedimentation rate. However, x-rays of her lumbosacral spine were normal, and an MRI showed "minimal degenerative" changes with no evidence of a disc herniation, spinal stenosis, or nerve root encroachment. (Tr. 213, 146). EMGs performed on Plaintiff over time have been essentially normal. (Tr. 247-248, 239-240). Examinations by multiple physicians have also revealed essentially normal results. Plaintiff has normal strength, sensation and reflexes (Tr. 137), and her diabetes has been documented to be "fairly controlled with no incidents of abnormal hypo[glycemia] or hyperglycemia." (Tr. 152).

Several doctors in the record have opined that Plaintiff could perform work. In April 2004, Jay Fried, M.D., evaluated Plaintiff's back pain, and concluded that it was "probably more muscular." (Tr. 251). He opined that Plaintiff could perform lighter duty jobs. (Tr. 251). In April 2004, Mary Lynn Hawkins, M.D., opined that Plaintiff could return to her past job as a sorter, even though she completed a form stating that Plaintiff is currently unable to work. (Tr. 265). In May 2004, Luis A. Del Rosario Cabral, M.D., a rheumatologist stated that while Plaintiff "is in chronic pain, she is miraculously able to do a lot of things that a lady with her symptoms would not be able to do like window shopping for two hours despite having pain." (Tr. 296). Plaintiff asked Dr. Del Rosario Cabral to note that she was disabled, and he responded in his notes, "I am not going to play any role in keeping her out of work, as I do not think clinically she needs it." (Tr. 295). In July 2004, Mohammad Mehdi, M.D., an orthopedist, reported that "there is no reason why [Plaintiff] cannot work." (Tr. 309).

In March 2006, Dr. Hawkins completed a form provided to her by Plaintiff counsel in which she indicated that Plaintiff has been disabled since 2003, due to her complaints of pain. Dr. Hawkins based her opinion on Plaintiff's own description of her symptoms. (Tr. 463, 456-466).

4

In October 2004, Plaintiff sought a mental health counselor for supportive therapy. (Tr. 347-350, 491-494). Progress notes from Plaintiff's counselor between October 19, 2004 and March 27, 2006, show that Plaintiff had a global assessment of functioning ("GAF") score of fifty-three and fifty-five.[1] (Tr. 342-350, 495-508).

At the Commissioner's request, Plaintiff underwent a consultative psychological evaluation in June 2005, with Joseph Keys, Ph.D. Dr. Keys assessed Plaintiff with a GAF of 65.[2] Dr. Keys opined that Plaintiff had no impairment in understanding or ability to carry out simple job instructions and that her ability to perform routine, repetitive tasks was only mildly impaired. (Tr. 376). According to Dr. Keys, plaintiff had no moderate, moderately severe, or severe mental limitations. (Tr. 376).

B.   The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel. Plaintiff testified, as well as a neighbor who sees Plaintiff on a daily basis. The A.L.J. consulted a vocational expert and asked her to consider a hypothetical person with Plaintiff's age,

---

[1]   A GAF of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Health Disorders ("DSM-IV") 32 (4th ed. 1994).

[2]   A GAF of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but is generally functioning pretty well." DSM-IV at 32.

5

education, work history, and all of the symptoms described by Plaintiff at the hearing. The vocational expert opined that such a person could not work due to the amount of pain and restrictions in her physical activities. The A.L.J. also posed an alternate hypothetical with the same age, education and vocational profile as Plaintiff, except that this individual could perform light work as defined in the Dictionary of Occupational Titles with the following additional limitations, simple routine work that would not require a lot of concentration, sit/stand option, and work that did not require fine visual acuity. In response, the vocational expert identified the jobs of (1) packer with 1,500 jobs locally and 150,000 jobs nationally, (2) inspector with 1,000 jobs locally and 70,000 jobs nationally, and (3) cashier with 3,000 jobs locally and over 200,000 jobs nationally. (Tr. 553-554). The A.L.J. then changed his hypothetical to include a limitation to sedentary work. In response, the vocational expert identified the jobs of (1) assembler with 1,000 jobs locally and 85,000 jobs nationally, and (2) security guard with 300 jobs locally and 70,000 nationally. (Tr. 554).

In his decision dated August 24, 2006, the A.L.J. found that Plaintiff suffered from the following severe impairments: myofascial pain syndrome (possibly fibromyalgia) with "anemia of chronic disease from inflammation, an adjustment disorder due to

6

pain and a depressed mood, diabetes mellitus with pre-proliferative diabetic retinopathy and visual deficits." The A.L.J. further found that Plaintiff had the residual functional capacity to sit up to six hours in an 8-hour work day with a sit/stand option, stand and walk up to six hours in an 8-hour day and lift weights of ten pounds frequently and twenty pounds occasionally. Due to her pain and adjustment disorder, the A.L.J. further limited Plaintiff to simple, routine tasks requiring limited concentration and jobs that do not require fine visual acuity due to her 20/40 visual acuity. (Tr. 20-21). Based on this residual functional capacity, the A.L.J. determined that Plaintiff could not perform her past relevant work, but could perform a number of other jobs existing in significant numbers in the national economy. Accordingly, the A.L.J. concluded that Plaintiff was not under a disability within the meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's

decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**DISCUSSION**

**I.   Evaluation Of Disability Claims**

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3).  To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy."  20 C.F.R. §§ 404.1505, 416.905.  In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured.  20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).  The claimant bears the initial burden of proving disability.  20 C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520, 416.920.  In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity.  In step two, the A.L.J. must

9

determine whether the claimant is suffering from a severe impairment.  If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three.  In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work.  Id. at 428.  If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five.  Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work.  Id.  The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work.  Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy.  At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied.  Id.  Specifically, the A.L.J. must find that there are

10

other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

II. **Whether The A.L.J.'s Decision Is Supported By Substantial Evidence**

By her Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence and contains several legal flaws. Specifically, Plaintiff contends that the A.L.J. (1) failed to give appropriate weight to the opinion of Plaintiff's treating primary care physician, Dr. Hawkins; (2) improperly rejected the medical evidence concerning Plaintiff's fibromyalgia, (3) improperly weighed Plaintiff's daily activities in assessing her credibility, and (4) improperly accepted the testimony of the vocational expert which was contradicted by Social Security Ruling 83-12.

The Court has reviewed the decision of the A.L.J. in light of the record evidence and concludes that it is supported by substantial evidence. Although a treating physician's opinion is entitled to great weight, a treating physician's statement that a plaintiff is unable to work or is disabled is not dispositive. The A.L.J. must review all the evidence and may discount the

opinions of treating physicians if they are not supported by the medical evidence, provided that the A.L.J. explain his or her reasons for rejecting the opinions adequately. Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001); Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).

In this case, the A.L.J. expressly addressed the opinion of Dr. Hawkins and found it to be entitled to only limited weight because it was inconsistent with the medical evidence in the record. As the A.L.J. noted, Dr. Hawkins is a primary care physician, whose opinion regarding Plaintiff's limitations was supported primarily by Plaintiff's subjective complaints of pain, which themselves are at odds with Plaintiff's daily activities. In addition, the opinions of numerous treating and evaluating specialists contradict Dr. Hawkins' opinion (Tr. 251, 295, 309), and the bulk of the objective medical evidence in the record does not support that Plaintiff suffers from a disabling condition. Indeed, even Dr. Hawkins opined in 2004, that Plaintiff was capable of returning to work and encouraged her to do so. (Tr. 265). In these circumstances, the Court cannot conclude that the A.L.J.'s decision to afford Dr. Hawkins' opinion limited weight was erroneous.

Plaintiff also contends that the A.L.J. improperly ignored the medical evidence concerning Plaintiff's fibromyalgia and substituted his opinions regarding the condition for the medical

evidence. The Court is not persuaded by Plaintiff's argument. "Even in fibromyalgia cases, the ALJ must compare the objective evidence and the subjective complaints and is permitted to reject plaintiff's subjective testimony so long as he provides a sufficient explanation for doing so." Nocks v. Astrue, 626 F. Supp. 2d 431, 446 (D. Del. 2009) (citing Prokopick v. Comm'r of Soc. Sec., 272 Fed. Appx. 196, 199 (3d Cir. 2008)). In this case, the A.L.J. expressly recognized that Plaintiff suffered from myofascial pain syndrome, possibly fibromyalgia, and that this impairment was severe. However, the A.L.J. concluded, based on the totality of the record evidence, that Plaintiff's condition was not disabling. The Court finds no error in this assessment. Plaintiff's medical tests, examinations, and the opinions of numerous specialists who treated her all support the A.L.J.'s conclusion that her condition, while severe, is not disabling.

Plaintiff further contends that the A.L.J.'s credibility assessments were erroneous. Specifically, Plaintiff contends that the A.L.J. improperly emphasized Plaintiff's daily activities and failed to consider the testimony of her neighbor.

Generally, the A.L.J.'s assessment of a plaintiff's credibility is afforded great deference, because the A.L.J. is in the best position to evaluate the demeanor and attitude of the plaintiff. See, e.g., Fargnoli v. Massanari, 247 F.3d 34, 43 (3d

Cir. 2001). However, the A.L.J. must explain the reasons for his or her credibility determinations. Schonewolf v. Callahan, 972 F. Supp. 277, 286 (D.N.J. 1997) (citations omitted). "Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible." Garrett v. Comm'r of Soc. Sec., 274 Fed. Appx. 159, 164 (3d Cir. 2008) (citing Burns v. Barnhart, 312 F.3d 113, 129-30 (3d Cir.2002). Additionally, allegations of pain and other subjective symptoms must be supported by objective medical evidence. Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

In this case, the Court is persuaded that the A.L.J. properly analyzed Plaintiff's subjective complaints of pain and her credibility. The A.L.J. did not base his determination solely on Plaintiff's daily activities, but considered them in the context of the record as a whole, including the objective medical evidence as required by the regulations.

As for the testimony of Plaintiff's neighbor, the Court notes that the A.L.J. expressly considered this testimony in his decision. The testimony of Plaintiff's neighbor was consistent with the testimony of Plaintiff, and the A.L.J. found such testimony to be not entirely credible in light of the record evidence, which the A.L.J. explained at length. Accordingly, the Court cannot conclude that the A.L.J.'s credibility assessments

of either Plaintiff or her neighbor were erroneous.

Plaintiff next contends that the A.L.J. erred in accepting the testimony of the vocational expert. Plaintiff contends that her testimony was inconsistent with Social Security Ruling ("SSR") 83-12, because unskilled jobs do not accommodate a sit/stand option. SSR 83-12 recognizes that there are jobs available that allow for a sit/stand option and requires the A.L.J. to obtain vocational expert testimony to determine whether a sit/stand option would significantly erode a claimant's occupational base. In this case, the A.L.J. complied with SSR 83-12 by expressly including in his hypothetical the need for a sit/stand option. The vocational expert went on to identify, based on her experience, jobs that would accommodate all of the limitations including the sit/stand option. (Tr. 553-554). Thus, the vocational expert's testimony demonstrates that the occupational base for light work would not be significantly eroded by a sit/stand option. Accordingly, the Court concludes that the vocational expert's testimony was not inconsistent with SSR 83-12, and is substantial evidence that supports the A.L.J.'s decision that Plaintiff is not disabled.

In sum, the Court concludes that the decision of the A.L.J. is supported by substantial evidence. As discussed above, the A.L.J. acknowledged that Plaintiff may be suffering from fibromyalgia which is a severe impairment, but he found no

support in the medical record that her impairment was disabling. Notably, numerous specialists including a rheumatologist and orthopedist found that Plaintiff was capable of performing work. As the A.L.J. noted, Plaintiff's subjective complaints were not supported by the record as a whole.  Accordingly, the Court will affirm the decision of the Commissioner denying Plaintiff's claim for DIB and SSI.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's Cross-Motion For Summary Judgment and deny Plaintiff's Motion For Summary Judgment.  The decision of the Commissioner dated August 24, 2006, will be affirmed.

An appropriate Order will be entered.